Filed 2/26/16  P. v. Realmuto CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067789 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE338577) |
| PETER R. REALMUTO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Desiree A. Bruce-Lyle, Judge.  Affirmed.

Stephen M. Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

In September 2014 the San Diego County District Attorney filed an information charging Peter R. Realmuto with four offenses:  (1) driving under the influence (DUI)

with three or more prior DUI convictions (count 1:  Veh. Code, § 23152, subd. (a)); (2) driving while having a measurable blood alcohol with three or more DUI convictions within 10 years (count 2:  Veh. Code, § 23152, subd. (b)); (3) driving while his driving privileges were revoked (count 3:  Veh. Code, § 14601.1, subd. (a)); and (4) committing a hit-and-run (count 4:  Veh. Code, § 20002, subd. (a)).

Realmuto pleaded guilty to count 2 and admitted a related allegation he had suffered three prior DUI convictions within the meaning of Vehicle Code sections 23626 and 23550, subdivision (a), thereby raising his count 2 offense to a felony.  The remaining charges were dismissed pursuant to the terms of the plea agreement.

At the sentencing hearing on January 16, 2015, the court, rejecting the recommendation in the probation officer's report that Realmuto be sentenced to a term of local imprisonment, suspended the imposition of sentence for five years and granted him formal probation.  Recognizing that Realmuto is a Marine Corps veteran who suffers from posttraumatic stress disorder (PTSD) (which was diagnosed in 2000 about 24 years after his four-year military service at Camp Pendleton ended in 1976), the court referred Realmuto to the Veterans Court for an assessment of whether his PTSD resulted from his military service.  The court was authorized to order the assessment under Penal Code[1] section 1170.9, subdivision (a) (hereafter section 1170.9(a)), which allowed the court to request such an assessment to aid the court in making the discretionary determination of whether it should order Realmuto placed in the Veterans Court's alternative sentencing

---

[1]     All further statutory references are to the Penal Code.

and treatment program (the Veterans Court program) under subdivision (b) of that section (hereafter section 1170.9(b)).  The Veterans Court's assessment team determined that Realmuto's PTSD did not result from his military service.  Based on that assessment, which the court accepted, the court found Realmuto was ineligible for the Veterans Court program.

On appeal, Realmuto claims his sentence must be reversed and the matter remanded for a determination under section 1170.9(a) of whether his PTSD stemmed from his military service, and for a discretionary determination under section 1170.9(b) of whether he was eligible for treatment under the supervision of the Veterans Court.  In support of this claim, he contends the court (1) abused its discretion by not deciding whether his PTSD was caused by his military service, (2) violated the California Constitution by improperly delegating its discretionary judicial power to the Veterans Court's assessment team, (3) allowed the executive branch to encroach upon the judicial branch in violation of the California Constitution's separation of powers doctrine, and (4) deprived him of his liberty interest in the Veterans Court's alternative treatment program in violation of his Fourteenth Amendment right to due process.  We affirm the judgment.

FACTUAL BACKGROUND[2]

On December 16, 2012, at about 1:50 a.m., California Highway Patrol officers observed Realmuto's silver BMW traveling at 65 to 70 miles per hour on Harbison Canyon Road while smoke, sparks, and debris were coming from the area of the front left

---

[2]     The following summary of the facts is taken from the probation report.

tire. One of the officers initiated a traffic stop and, while he was speaking with Realmuto, the officer smelled alcohol on Realmuto's breath and observed that his eyes were red and watery. After Realmuto complied with the officer's directions by exiting the car and walking to the rear of the vehicle, he became physically unstable and told the officer his legs did not work because he was disabled. He leaned against the car, sank to the ground, and complained of back and leg pain and difficulty breathing. Realmuto repeatedly fell asleep, gave numerous unintelligible answers, denied consuming alcohol, and was unable to blow hard enough to allow the officers to successfully administer a breathalyzer test.

Officers later determined that Realmuto made an unsafe turn, then struck a curb, a cable junction box, and a fence, and then drove through the fence in order to reenter the road. When he refused to submit to a blood alcohol test during booking, authorities administered a nonconsensual blood draw. Test results determined his blood alcohol content was about 0.16 percent.

DISCUSSION

As noted, Realmuto claims his sentence must be reversed and the matter remanded for a determination under section 1170.9(a) of whether his PTSD stemmed from his military service, and for a discretionary determination under section 1170.9(b) of whether he was eligible for treatment under the supervision of the Veterans Court. He contends the court (1) abused its discretion by not deciding whether his PTSD was caused by his military service as it was required to do under section 1170.9(a), (2) violated the California Constitution by improperly delegating its discretionary judicial power to the

4

assessment team of "nonjudicial actors," (3) "allowed the executive branch to encroach upon the judicial branch in violation of the California Constitution's separation of powers doctrine" when it "delegated its discretionary power to a decision-making team that included the deputy district attorney," and (4) deprived him of his liberty interest in the Veterans Court's alternative treatment program in violation of his Fourteenth Amendment right to due process. In the exercise of this court's discretion, we reach the merits of Realmuto's contentions over the Attorney General's objection that Realmuto forfeited them by raising them for the first time on appeal.[3] We conclude Realmuto's contentions are unavailing.

A. *Background*

According to the probation report, Realmuto served in the Marine Corps from 1972 to 1976 as a heavy equipment mechanic stationed at Camp Pendleton. During his military service he began having medical problems with his knees, back, and hip, and he started receiving treatment for those problems in 2000. Realmuto was diagnosed with PTSD in 2000. The report indicates the treatment of his PTSD includes his taking psychotropic, anti-anxiety, and sleep medications. The probation report recommended that the court sentence Realmuto to a term of two years in local custody with credit for time served.

---

[3]     In response to the Attorney General's forfeiture argument, Realmuto asserts that, "[i]f this court determines that [his] claim has not been preserved for appellate review, then defense counsel rendered ineffective assistance." In light of our decision to reach the merits of Realmuto's claims, this assertion is moot.

5

At his sentencing hearing on January 16, 2015, Realmuto provided verification of his medical issues and treatment, a list of medications, a military service certificate, a stalking program completion certificate, a United States Department of Veterans Affairs (VA) benefits letter, a VA card, physical therapy notes, a letter from a doctor regarding his alcohol use, a letter from a doctor regarding his driving under the influence incident on May 8, 2012, and a letter from a psychiatrist.

At that hearing the court[4] asked defense counsel whether the Veterans Court would be willing to accept Realmuto. Defense counsel responded that the Veterans Court was "willing to have him do the application to see if he qualifies, and based on what the V.A. told him, it was actually their suggestion that he go[] into Veterans Court in light of his medical issues."

The court indicated its inclination to order "five years of supervision" and, assuming Realmuto was qualified for the Veterans Court program, "to put him into that program instead of a harsh custodial sanction." The court suspended the imposition of sentence for a period of five years and placed Realmuto on formal felony probation subject to certain terms and conditions. The court then ordered Realmuto to "report to probation forthwith, and then to [the] Veterans Court" for the application process and screening.

---

[4]     The Honorable Daniel B. Goldstein.

At a review hearing on February 3, 2015, the court[5] ordered that Realmuto be assessed by the Veterans Justice Outreach (VJO) officer[6] on February 11, 2015.

At the next review hearing on February 17, 2015, defense counsel told the court she had informed Realmuto of the "team's decision" he was not eligible for the Veterans Court program because it had found no connection between his in-service injury and his PTSD. She reported that Realmuto was "very, very unhappy and disappointed at the team's decision." Defense counsel also told the court that Realmuto "said he sought a diagnosis from the time he got out [of the military] until the time he was given one without success until the year 2000 when he was diagnosed with [PTSD], and he feels that . . . there truly is a nexus because of the injury he sustained during service in the 70's and that—the fact his [PTSD] diagnosis came so late was through no fault of his own desire to have a diagnosis, but he had had a lot of trouble with the V.A. and the system and getting his needs met." Defense counsel again told the court she had explained to Realmuto that "the team made a decision," and she reiterated that Realmuto was "profoundly disappointed that the court [was] not finding the connection" between his military service injury in 1974 and his PTSD.

The court found Realmuto was ineligible for the Veterans Court program. Specifically, the court told Realmuto, who was present in court:

> "[T]he court has heard the representations counsel has made. We did discuss your matter at length and *the decision was that there was*

---

5      The Honorable Desiree Bruce-Lyle.

6      The reporter's transcript identifies the VJO officer as "Ms. Villavicencio."

7

*no nexus*. And the representations your counsel has made, that's not really changing the *decision of the team. It is a team decision that was made*." (Italics added.)

The court then referred Realmuto to the VA representative at the hearing for other treatment options. Realmuto expressed how "difficult" it would be for him, and the court replied, "Well, I appreciate that, but as far as Veterans' Court, *there is nothing more we can do because of the team's finding*." (Italics added.)

B. *Applicable Legal Principles*

1. *Section 1170.9*

Section 1170.9 provides a trial court with a discretionary sentencing and treatment alternative to the imposition of imprisonment in county jail or state prison in the case of veterans who have served in the United States military and have been convicted of a criminal offense, when they allege they committed their offense as a result of military service-related PTSD, substance abuse, or psychological problems (among other specified conditions). (§1170.9(a) & (b); see *People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1088 (*Ferguson*).)

Specifically, as pertinent here, section 1170.9(a) provides:

> "In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that he or she committed the offense as a result of . . . post-traumatic stress disorder . . . stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was . . . a member of the United States military and whether the defendant may be suffering from . . . post-traumatic stress disorder . . . as a result of his or her service."

8

Section 1170.9(a) also provides that "[t]he court may request, through existing resources, an assessment to aid in that determination."

Section 1170.9(b)(1) provides that, if the court determines the defendant "is a person described in [section 1170.9(a)], and if the defendant is otherwise eligible for probation, the court shall consider the circumstances described in [section 1170.9(a)] as a factor in favor of granting probation."

Finally, section 1170.9(b)(2) provides that, "[i]f the court places the defendant on probation, the court may order the defendant into a local, state, federal, or private nonprofit treatment program . . . , provided the defendant agrees to participate in the program and the court determines that an appropriate treatment program exists."

Thus, under section 1170.9 a trial court may order a defendant who has been convicted of a criminal offense, and who could otherwise be sentenced to county jail or state prison, into a qualifying treatment program (like the Veterans Court program in San Diego) if the following six requirements are satisfied: (1) the defendant served in the United States military (§ 1170.9(a)); (2) as a result of that service, the defendant suffers from PTSD, substance abuse, or another condition specified in section 1170.9(a) (§ 1170.9(a)); (3) the defendant is eligible for probation (§ 1170.9(b)(1)); (4) the court places the defendant on probation (§ 1170.9(b)(2)); (5) the court determines there is an appropriate local, state, federal, or private nonprofit program that can treat the defendant (§ 1170.9(b)(2)); and (6) the defendant agrees to participate in that program (§ 1170.9(b)(2)). (See *Ferguson*, *supra*, 194 Cal.App.4th at p. 1089.) If those six requirements have been met, the trial court then has discretion under section 1170.9(b)(2)

9

to order the defendant into the treatment program for a period not to exceed that which he would have served in prison.  (§ 1170.9(b)(2); see *Ferguson*, at p. 1089.)

2. *Standard of review*

An appellate court reviews a trial court's denial of alternative sentencing under section 1170.9 for abuse of discretion.  (See *Ferguson*, *supra*, 194 Cal.App.4th at p. 1092 ["the court did not properly exercise its discretion under section 1170.9"].)  "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113.)

C. *Analysis*

Realmuto's claims of statutory and constitutional error are principally based on his contention that the court abused its discretion by failing to independently determine whether Realmuto's PTSD stemmed from his military service, as it was required to do under section 1170.9(a).[7]  However, the record shows the court made an implied determination under section 1170.9(a) that Realmuto's PTSD did *not* stem from his military service.

Specifically, the record shows the court ordered an assessment by the Veterans Justice Outreach officer on February 11, 2015.  Section 1170.9(a) authorized the court to

---

[7]    Section 1170.9(a) provides in part that "the court shall, prior to sentencing, make a determination as to whether the defendant was . . . a member of the United States military and whether the defendant may be suffering from . . . post-traumatic stress disorder . . . as a result of his or her service."

10

"request, through existing resources, an assessment to aid" the court in determining (among other things) whether Realmuto's PTSD stemmed from his military service. The assessment showed there was no nexus between Realmuto's PTSD, which the parties agree was diagnosed in 2000, and the injury he suffered in the 1970's during his military service as a heavy equipment mechanic at Camp Pendleton.

It is true, as Realmuto points out, that defense counsel and the court both referred to the assessment as a "decision" of the assessment team, rather than what it was─a statutorily authorized assessment requested by the court to "aid" the court in determining whether Realmuto's PTSD stemmed from his military service (see § 1170.9(a)). The court did not *explicitly* state that, based on that assessment and the other evidence it considered, it was making a finding that Realmuto's PTSD did not stem from his military service for purposes of section 1170.9. Realmuto has cited no statutory or case law authority, and we are aware of none, that requires such an explicit finding. Here, the court announced its determination─that Realmuto's PTSD did not stem from his military service for purposes of section 1170.9─by inartfully stating:

> "[T]he court has heard the representations counsel has made. We did discuss your matter at length and *the decision was that there was no nexus*. And the representations your counsel has made, that's not really changing the *decision of the team. It is a team decision that was made*." (Italics added.)

When Realmuto, who was present at the hearing, expressed how "difficult" it would be for him, the court inartfully replied, "Well, I appreciate that, but as far as Veterans' Court, *there is nothing more we can do because of the team's finding*." (Italics added.)

11

The court's foregoing determination was an *implied* finding, based on the assessment it had properly requested under section 1170.9(a) and had clearly found to be persuasive, that Realmuto's PTSD did not stem from his military service for purposes of section 1170.9. It would have been better if the court had explicitly stated it was finding, based on the assessment and any other supporting evidence the court considered, that Realmuto's PTSD did not stem or result from his military service for purposes of section 1170.9. However, the court clearly indicated that it agreed with the team's assessment, and we do not see how Realmuto could have been deceived or prejudiced by the form of the order. Defense counsel implicitly acknowledged that the court made that finding. Specifically, Realmuto's attorney told the court that Realmuto was "profoundly disappointed that *the court* [was] not finding the connection" between his military service injury in 1974 and his PTSD." (Italics added.) Counsel's acknowledgment that "the court [was] not finding the connection" was an acknowledgment that the court was finding there was no connection between Realmuto's PTSD and his military service. Thus, the record shows the court found there was no such "connection" because it impliedly determined, based on the expert assessment it had requested and considered, that no such nexus existed. Based on that factual finding, the court ruled that Realmuto was not eligible for the Veterans Court's program, as shown by the court's minutes. Thus, we reject Realmuto's contention that the court abused its discretion by failing to independently determine whether Realmuto's PTSD stemmed from his military service.

We also reject Realmuto's contention that the court violated the California Constitution by improperly delegating its discretionary judicial power to the assessment

12

team of "nonjudicial actors."  For reasons already discussed, we have concluded that the *court* made the ultimate determination that Realmuto's PTSD did not stem from his military service.

We also reject Realmuto's contention that the court violated the California Constitution by "allow[ing] the executive branch to encroach upon the judicial branch" in violation of the California Constitution's separation of powers doctrine when it "*delegated* its discretionary power to a decision-making team that included the deputy district attorney."  (Italics added.)[8]  This claim is also premised on Realmuto's contention that the court delegated its judicial power.  We have already rejected that claim.

Last, we reject Realmuto's contention that the court deprived him of his liberty interest in the Veterans Court's alternative treatment program in violation of his Fourteenth Amendment right to due process.  When an individual claims a denial of due process, the court inquires into the nature of the individual's claimed interest.  (*Board of Regents v. Roth* (1972) 408 U.S. 564, 570–571 [92 S.Ct. 2701, 2705–2706].)  To have a

---

[8]  Without citation to the record as required by rules 8.204(a)(1)(C) and 8.360(a) of the California Rules of Court, Realmuto asserts the court "delegated its discretionary power to a decision-making team that included the *deputy district attorney*."  (Italics added.)  The Attorney General challenges this assertion, stating:  "[Realmuto's] argument that the executive branch 'encroach[ed] upon' the judicial branch . . . is based upon the unsupported assumption that the assessment team "included the deputy district attorney.'"  The Attorney General further states that, "[a]lthough the deputy district attorney was undoubtedly involved in the adversarial hearings in court, along with defense counsel and the court itself, nothing in the record indicates that the deputy district attorney was at all involved in the assessment process."  In his reply brief, Realmuto improperly relies on "journalistic accounts" outside the record and essentially validates the Attorney General's objection by stating he "did not assume the deputy district attorney participated in the decision-making process.  He reasonably inferred it."

13

protectable interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Id*. at p. 577.)

Here, under section 1170.9(a) Realmuto was required to establish his eligibility for the Veterans Court program, including that his PTSD resulted from his military service, *before* the court could even consider whether, in the exercise of its discretion under section 1170.9(b), it should order Realmuto into that program. Realmuto failed to meet that threshold requirement and, thus, he failed to establish any liberty interest in the court's exercise of its discretion under that subdivision. (See *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [100 S.Ct. 2227, 2229] [a defendant has a legitimate expectation he will be deprived of liberty only to the extent determined in the exercise of the trial court's statutory discretion].)

For all of the foregoing reasons, we affirm the judgment.

DISPOSITION

The judgment is affirmed.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.


14